**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH MARTIN,**

                              **Plaintiff,**

**-against-**                                                        **04-CV-800**

**JOSEPH TATRO and ERIC FUENFSTUEK,**

                              **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

Bradford C. Riendeau, Esq.               Bradford C. Riendeau, Esq.
637 Academy Street
Watertown, NY
*For Plaintiff*

ELIOT SPITZER                            Megan M. Brown, Esq.
Attorney General of the
State of New York
The Capitol
Albany, New York
*For Defendants*

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                         **DECISION & ORDER**

**I.  INTRODUCTION**

        Plaintiff Joseph Martin commenced this action pursuant to 42 U.S.C. § 1983 asserting that

Defendants Joseph Tatro and Eric Fuenfstuek, New York State Troopers, violated his constitutional

rights when they entered his home without a warrant, arrested him without justification, and used excessive force during the arrest. See Compl., doc. # 1. Defendants have moved for summary judgment pursuant to FED. R. CIV. P. 56 contending that their actions were legally justified or, in the alternative, that they are entitled to qualified immunity.  For the reasons that follow, the motion is granted.

## II. STANDARD FOR SUMMARY JUDGMENT

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor.  Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002). However,

2

a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998).

## III. BACKGROUND

The following facts are either (1) accepted as true for purposes of this motion because Plaintiff has admitted certain  facts through the responsive Local Rule 7.1 Statements, see N.D.N.Y.L.R. 7.1(a)(3); Def. L.R. 7.1 Stat., doc. # 11-6; Plt. L.R. 7.1 Stat., doc. # 13,[1] or, (2) accepted as true because Plaintiff has failed to provide sufficient evidence or argument for the Court to discount a properly supported fact. Those facts derived from the first category are set forth below without citation to the record; those facts derived from the second category are set forth below with citation to the record and, in some instances, a footnote explaining either the limitation that a fact is accepted for, or the reason the Court has accepted the fact.

In mid-June 2001, Plaintiff began staying at a house in St. Regis Falls, New York ("the house") three days each week.  The house, a two-story building that was otherwise unoccupied, belonged to Tom Fisher who resided in Clayton, New York (approximately 100 miles from St. Regis Falls).

At approximately 6:00 p.m. on July 12, 2001, Plaintiff returned to the house after work. When trying to enter, his key broke off in the exterior door's lock preventing Plaintiff from opening the door. Consequently, Plaintiff entered the house by climbing through an open window. In doing

---

[1]In Plaintiff's responsive Local Rule 7.1 Statement of Material Facts, he "agrees" with the factual propositions set forth in paragraphs 1, 3-13, 17-18, 21, and 27-57 of Defendants' Local Rule 7.1 Statement of Material Facts, and, thus, the facts stated in these paragraphs are accepted as true.

so, Plaintiff entered head first and fell forward, or pivoted, into the house.  It was light out at the time Plaintiff climbed through the window. Shortly after entering the house, a neighbor came to Plaintiff's door and the two had a discussion about "a tree."  Def. Ex. B (Martin Sup. Dep.), p. 1.[2] Plaintiff then cleaned up and left the house to get something to eat.  After eating at a local establishment, he returned to the house shortly after nine O'clock and "entered the residence through the unlocked and wide open front door." Id.[3]

On July 12, 2001, Defendants Tatro and Fuenfstuek, New York State Police Troopers stationed at Troop B in Malone, New York, were both on duty and assigned to separate patrol cars. At some point that evening,[4] each Defendant received a report that a burglary was in progress at a residence on Duane Street in St. Regis Falls, New York; that the house was reported as unoccupied because the owner lived out of the area; and that an "identified witness" made a complaint that a male subject was seen entering the residence through a window. See Def. L.R. 7.1 Stat. ¶¶ 14-16.[5]

---

[2] As discussed *infra*, on July 16, 2001, Plaintiff went to the New York State Barracks to complain about his treatment by the Defendant State Troopers that is the subject of this action.  In making this complaint, Plaintiff gave a sworn "Supporting Deposition" which Defendants have attached as Ex. B to their summary judgment papers.

[3] The facts indicate that Plaintiff could not get the broken key out of the lock before he left for dinner.

[4] The parties' Local Rules Statements do not contain the time that the reports were received.  Both Troopers assert that they arrived at the Fisher residence fifteen to twenty minutes after they had been informed of the complaint. See Def. L.R. 7.1 Stat. ¶¶ 14-16. There is no dispute that the Troopers were outside the house with Plaintiff at approximately 11:00 P.M. It is unclear how long they were at the residence before entering, and how long they were inside it before they came outside with Plaintiff.

[5] Plaintiff "objects" to these asserted facts, contending that the assertions amount to inadmissible hearsay that cannot be considered on this motion. While hearsay may not be used to support a motion for summary judgment, Sarno v. Douglas Elliman- Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999), it appears that the defendants offer this evidence to show their states of mind at the time they went to, and eventually entered, the Fisher residence. Inasmuch as the information that was known to the Troopers when they took their challenged-actions is a pivotal issue on this motion, see Devenpeck v. Alford, -- U.S. --, --, 125 S. Ct. 588, 593 (2004)("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.")(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)); Minnesota v. Olson, 495 U.S. 91, 100 (1990)(warrantless intrusion into a home may be justified by hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a

(continued...)

Both Defendants proceeded to St. Regis Falls and arrived at the house in their patrol cars approximately fifteen to twenty minutes after each had received the "burglary in progress" report. Id.

Upon arriving, Defendants observed a Dodge pickup in the driveway and a light on upstairs in the house. Trooper Fuenfstuek checked the exterior of the house and found all the doors were secured. Defendant Tatro observed an open window, which he believed was consistent with the report that a male had been seen entering the house through a window. Tatro Dec. ¶ 13.[6] Defendants contend that, at this point in time, they believed they were responding to a burglary in progress call, that a felony was occurring inside the residence, and that there was an urgent need to take action. Tatro Dec. ¶¶ 10-11; Fuenfstuek Dec. ¶¶ 13-14. They further contend that they reasonably believed that no warrant was required for their entrance into the house because "exigent circumstances" existed. Tatro Dec. ¶¶ 10-11; Fuenfstuek Dec. ¶¶ 13-14.[7]

Both Troopers entered the house through the open window and began loudly announcing

---

[5](...continued)

suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling); Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001)("For Fourth Amendment purposes, the reasonableness of an officer's belief must be assessed in light of the particular circumstances confronting the officer at the time.")(citing Graham v. Connor, 490 U.S. 386, 397 (1989)), and inasmuch as Plaintiff has done nothing to dispel Defendants' properly supported assertions that they received these complaints, see Rexnord Holdings, Inc., 21 F.3d at 525-26; Scotto, 143 F.3d at 114, the Court accepts these facts as true for purposes of this motion. However, the evidence will be considered only for the effect the information might have had on Defendants' respective states of mind at the time, or on the state of mind of a reasonable officer in the same situation.

[6] Plaintiff "objects" to this statement on hearsay grounds. See Plt. L.R. 7.1 Stat. ¶ 20. The asserted fact of finding an open window is not hearsay, and is accepted for purposes of this motion because Plaintiff has provided no evidence to contradict this fact. Similarly, Defendant Tatro's belief as to the evidentiary value of the open window is not hearsay and is seemingly offered (and accepted) only for the purpose of demonstrating Tatro's state of mind at the time.

[7] Plaintiff "objects" to these "facts": (1) on hearsay grounds; (2) because "state of mind, belief and the reasonableness thereof are questions for the jury;" and (3) "the existence ... of exigent circumstances is a conclusion of law based upon the fact determination by the trier of facts." Plt. L.R. 7.1 Stat. ¶ 19. Again, the Court accepts these assertions for state of mind purposes.

their presence by calling "State Police," but received no response. Tatro Dec. ¶ 15; Fuenfstuek Dec.

¶ 16.  The Troopers proceeded up the stairs toward the light on the second floor while they

continued to announce their presence. Tatro Dec. ¶ 19; Fuenfstuek Dec. ¶ 18.[8]

Plaintiff awoke to find Trooper Tatro standing by his bed. Def. Ex. A (Martin Dep.), pp. 27-

28.  Tatro helped Plaintiff out of bed and held Plaintiff by his left arm. Defendants asked Plaintiff if

there was anyone else in the house, and Tatro instructed Plaintiff to face the wall and put his hands

over his head.  When he did, Tatro raised Plaintiff's tee-shirt and asked if he had "anything under

there."  Tatro then asked Plaintiff where the light switch was, but Plaintiff did not know. Plaintiff

saw Fuenfstuek holstering his weapon but does not know if Tatro had his weapon drawn or

holstered.[9]

Tatro asked to see Plaintiff's identification, which Plaintiff said was downstairs in the

kitchen. Def. Ex. B, p. 2.  Tatro instructed Plaintiff to proceed downstairs.  Tatro escorted Plaintiff

by holding Plaintiff's upper left arm with a very tight grip.  However, as Plaintiff took the first step

on the stairs, he stumbled and Tatro let go of Plaintiff's arm. While Tatro was accompanying

Plaintiff down the stairs, Fuenfstuek checked in closets and other rooms upstairs, shouting that he

---

[8] Plaintiff "objects" to these last two "facts" on the grounds that Plaintiff testified that he was asleep and did not hear these announcements. See Pltf. L.R. 7.1 Stat. ¶¶  22 , 23 (citing Plaintiff's deposition transcript).  The fact that Plaintiff was asleep and did not hear the Troopers announce their presence, or see them ascend the stairs, does not mean it did not occur. Further, the absence of any testimony refuting these asserted facts, especially in light of the fact that Plaintiff claims that he was sleeping in his bed and heard a voice say "we're here" but did not know where it came from (so he rolled over and went back to sleep), see Martin Dep., ex. A, pp. 27-28, is nothing more than an unsupported denial. See Rexnord Holdings, Inc., 21 F.3d at 525-26; Scotto, 143 F.3d at 114.

[9] Both defendants asserted that, when they entered the building, they believed it was necessary to have their weapons unholstered and pointing towards the ground based on the nature of the call to which they were responding. Def. L.R. 7.1 Stat. ¶ 23; Tatro Dec. ¶¶ 16-17; Fuenfstuek Dec. ¶¶ 15, 17.  Plaintiff "objects" to these assertions on the grounds of (1) hearsay and (2) that state of mind is for the trier of fact. Because the only material fact is whether Plaintiff knew the officers had their handguns drawn, and because he saw one officer with his handgun being re-holstered but does not know if the other officer had his gun out of its holster, it is irrelevant what the officers did in this regard when they entered the building.

found no weapons or other people in the house.

Once downstairs, Tatro asked Plaintiff questions about the amount of cash he had with him and why he had certain tools in the house. Tatro then asked Plaintiff to step outside. Plaintiff asked if he could put his boots on, although he did not know where they were. Fuenfstuek advised Plaintiff that there was a pair of boots in the bathroom, and Plaintiff put on these boots and went outside.

Once outside, Tatro asked for Plaintiff's license and registration. Plaintiff sat in his vehicle while Tatro checked Plaintiff's license information via the police radio. Tatro then asked Plaintiff if he knew his neighbors. Plaintiff indicated that he did. Tatro escorted Plaintiff to one of the neighbors' houses and knocked on the door, apparently to see if the neighbor could identify Plaintiff. It was approximately eleven o'clock in the evening. No one answered the door at the neighbor's house.

Tatro then returned with Plaintiff to the house and instructed Plaintiff to sit in the driver's side of Plaintiff's car. Tatro spoke with Fuenfstuek, and then Fuenfstuek left in his patrol car. Tatro told Plaintiff to have his landlord call the State Police or else Plaintiff would be "hearing from [them]." Plaintiff told Tatro: "You haven't been too bad, but I wish I could say the same for your partner."

On July 16, 2001, Plaintiff went to the New York State Police barracks to file a complaint regarding his treatment by Defendants on July 12th. The State Police took photographs of three bruises Plaintiff noticed on his body the day after the incident - one on the right hand side of his torso under his arm, and two on his upper left arm. See Def. Ex. B, p. 3. In his sworn Supporting Deposition given to the New York State Police on July 16, 2001, Plaintiff attests:

I have no recollection of any specific incident that caused any of these bruises.

7

> Trooper Tatro did grip me by the left arm as he steered me toward the stairs.  I do not
> recall feeling any pain that might have caused the bruising and don't know how they
> occurred.

Def. Ex. B, p. 3.

Plaintiff still cannot attribute the bruise on the right hand side of his torso to any actions by

either of the Defendants. When asked at his deposition how he got the bruises on his upper left arm,

Plaintiff stated: "Purely speculation, I would say that's where Trooper Tatro had a hold of me." Ex.

A, pp. 57-58, Ex. C.

## IV.  DISCUSSION

### A.  Warrantless Entry

The Fourth Amendment prohibits warrantless entries by police unless the entry is authorized

by a valid exception to the warrant requirement. See Minnesota v. Olson, 495 U.S. 91, 100 (1990);

U.S. v. Deutsch, 987 F.2d 878, 883(2d Cir. 1993);[10]  Absent a warrant, "police officers need ...

probable cause plus exigent circumstances in order to make a lawful entry into a home." Kirk v.

Louisiana, 536 U.S. 635, 636 (2002)(per curiam)(citing Payton v. New York, 445 U.S. 573 (1980));

see Loria v. Gorman, 306 F.3d 1271, 1283-84 (2d Cir. 2002)(Police officer's "entry into [plaintiff's]

home and seizure of him without a warrant violated a constitutional right unless justified by exigent

---

[10] In Deutsch, the Second Circuit considered whether police officers had improperly entered a suspect's home without a warrant to effectuate an arrest. The Circuit Court wrote:

> Law enforcement agents must conform their behavior to the requirements of the Constitution and normally may not enter anyone's property without a properly executed warrant.  Absent exigent circumstances (certainly not present here), "the warrantless entry of law enforcement officers into the private home of a suspect, for the purpose of making an arrest supported by probable cause, is barred by the Fourth Amendment...."  United States v. Campbell, 581 F.2d 22, 25 (2d Cir.1978) (citations omitted).

987 F.2d at 883.

circumstances."); United States v. MacDonald, 916 F.2d 766, 769 (2d Cir.1990)(*en banc*)(Although a warrantless search is *per se* unreasonable, it can be justified "where exigent circumstances demand that law enforcement agents act without delay."), cert. denied, 498 U.S. 1119 (1991).

In the instant case, based upon the uncontradicted evidence that (1) Defendants received a complaint from an "identified witness" that a burglary of an unoccupied building was in progress; (2) Defendants were told that the witness saw a male climbing through a window; and (3) upon arriving, Defendants observed (a) a truck in the driveway, (b) an open window, and (c) a light on in the house, there existed probable cause to believe that a crime was occurring inside the house. See Devenpeck v. Alford, -- U.S. --, --, 125 S. Ct. 588, 593 (2004)("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.")(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)); Calderola v. Calabrese, 298 F.3d 156, 165 (2d Cir. 2002)("[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that might not be the case."); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999)(Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."); Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997)(Police may rely on information gained from witnesses or private citizens in forming their probable cause determination.); Hotaling v. LaPlante, 67 F. Supp. 2d 517, 522 (N.D.N.Y. 2001)(valid probable cause to arrest rested upon information supplied by an identified witness, and even though a further investigation by the Trooper would have led to a contradictory conclusion, Trooper's conduct was

9

not unreasonable under the circumstances); see also People v. Chandler, 762 N.Y.S.2d 179, 180 (3rd Dept. 2003);[11] People v. Bero, 526 N.Y.S.2d 979, 982 (2nd Dept. 1988)("[T]he report of a named citizen [], combined with the officers' observations of an apartment containing the telltale signs of a recent burglary, sufficed to provide the officers with probable cause to believe that a burglary had been committed."). However, probable cause alone is insufficient to justify a warrantless intrusion into a home. "Absent exigent circumstances, the firm line at the entrance to the house may not reasonably be crossed without a warrant." Kirk, 536 U.S. at 636 (quoting Payton, 445 U.S. at 590).

"[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." Welsh v. Wisconsin, 466 U.S. 740, 749-750 (1984). Recognized exigent circumstances include hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling. Minnesota v. Olson, 495 U.S. at 100. The test for

---

[11] In Chandler, the Third Department wrote:

We find no merit in defendant's contention that the evidence against him was legally insufficient to support his conviction because the "building" from which he stole property was not a "dwelling" (see Penal Law § 140.00 [3] ). Viewing the evidence in a light most favorable to the People, there was most assuredly a valid line of reasoning and permissible inferences to support the jury's verdict convicting defendant of burglary in the second degree (see People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 [1987] ). The undisputed evidence at trial reveals that the premises from which defendant removed the subject items was a one-family home in a residential neighborhood. Its owner testified that he had purchased the home 25 years earlier and had lived in it himself for many years while he worked in the area. In recent years, it was occupied by his son while he attended high school in the area and then during his college breaks. The home contained personal furnishings and had all utilities intact. There were curtains on the windows and items in the refrigerator. In describing the interior of the premises, one of the investigating officers testified that it was a "very lived-in type house, nothing out of the ordinary." Thus, although the home may have been unoccupied at the precise time of the burglary and was allegedly flea-infested and unsanitary, it still constituted a "dwelling" for purposes of the burglary statute as it was a "building which is usually occupied by a person lodging therein at night" (Penal Law § 140.00[3]; see People v. Barney, 99 N.Y.2d 367, 372, 756 N.Y.S.2d 132, 786 N.E.2d 31 [2003] ).

762 N.Y.S.2d at 180.

determining exigent circumstances is an objective one that turns on the totality of the circumstances

confronting law enforcement agents in a particular case. <u>MacDonald</u>, 916 F.2d at 769.

Courts in the Second Circuit use the following factors as guides to determine whether

exigent circumstances justifying a warrantless entry are present:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged;  (2) whether the suspect is reasonably believed to be armed;  (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered;  (5) a likelihood that the suspect will escape if not swiftly apprehended;  and (6) the peaceful circumstances of the entry.

<u>Loria</u>, 306 F.3d at 1284 (quoting <u>United States v. Fields</u>, 113 F.3d 313, 323 (2d Cir. 1997)); <u>see</u>

<u>MacDonald</u>, 916 F.2d at 769-770 (citing the same six factors). These factors are "not intended as an

exhaustive canon, but as an illustrative sampling of the kinds of facts to be taken into account."

<u>MacDonald</u>, 916 F.2d at 770.

Here, based upon the uncontested evidence, the first factor is in Defendants' favor. The

officers had reason to believe that a burglary was occurring, and, therefore, had reason to believe

that a violent felony offense was occurring inside the house. See <u>People v. Mason</u>, 248 A.D.2d 751,

754 (3rd Dept. 1998)("Burglary in the second degree is classified as a violent felony offense (<u>see</u>,

Penal Law § 70.02[1][b]) punishable by an indeterminate sentence of up to 7 ½ to 15 years and,

therefore, is regarded as a very serious crime."). There is also a strong showing of probable cause

such to satisfy the third factor in Defendants' favor. <u>Id.</u>  Like in <u>Mason</u>, Defendants had reasons to

believe that a male suspect had broken into the house and, upon inspection, found an open window

consistent with that allegation. <u>See id.</u> 751-52.

Similarly, due to the fact that there was a truck in the driveway and a light on in a house

reported to be unoccupied, there was sufficient reason to believe the burglary suspect was still in the

11

house. Thus, the fourth factor is also in Defendants' favor. Finally, Defendants' entry into the house was peaceful, and they announced their presence immediately upon entry.  Therefore, the sixth factor is also in Defendants' favor. Id. at 755 ("Finally, the Deputies entered peacefully through the open back door and immediately announced their presence.").

Nonetheless, on this motion for summary judgment on which the Court must resolve all facts and inferences in favor of the non-moving party, the Court cannot conclude that Defendants have satisfied the second and fifth factors. Regarding the second factor, there is no evidence tending to indicate that the suspect was armed. The question of whether the suspect is armed has been an important factor in many burglary/warrantless entry cases inasmuch as the courts have been willing to find exigent circumstances in light of the perceived need to protect other inhabitants in the buildings. See People v. Pollard, 761 N.Y.S.2d 154, 155 (1st Dept. 2003);[12] People v. Longboat, 718 N.Y.S.2d 761, 762 (4th Dept. 2000)("Based on the officer's uncontroverted testimony at the suppression hearing, the court properly determined that the entry into defendant's apartment was justified by exigent circumstances, i.e., the perception that an injured person might be in the apartment."); Mason, 248 A.D.2d at 755 ("[W]e also find that defendant's flight from the police and forced predawn entry into the dwelling raised a reasonable inference that his presence inside posed a danger to any occupants."); see also Loria, 306 F.3d at 1285-86 ("Although the existence of

---

[12] In Pollard, the First Department found sufficient exigent circumstances based upon the following:

When the police arrived, they had probable cause to believe that defendant had attacked two people that same day while armed with a knife.  When defendant's 13-year-old sister opened the door and appeared to be in an anxious state, they had reason to believe the possibly armed and dangerous defendant was inside the apartment with her and that any delay for the purpose of securing a warrant would have created an unreasonable risk.

761 N.Y.S.2d at 155 (citation omitted).

12

probable cause and knowledge that the suspect is on the premises are important predicates to a finding that an entry was justified based on exigent circumstances, they are not sufficient to justify an entry where the crime involved is minor and there is no apparent potential for violence."). Here, the police were advised that the house was unoccupied at the time. This fact, taken in the light most favorable to Plaintiff, negated the possibility that a potential victim was in the house with the burglar. Further, there is insufficient evidence indicating that, absent a warrant, the suspect likely would have escaped or destroyed evidence. See Bero, 526 N.Y.S.2d at 983.[13]  Thus, the second and fifth factors must be resolved in Plaintiff's favor. See People v. Hallman, 667 N.Y.S.2d 23, 26 (1st Dept. 1997)("[E]xigency did not exist when police had no reasonable basis to conclude that the burglary suspect was armed, and his escape from the premises, undetected, was unlikely.")(citation omitted).  Given this conclusion, and applying the heavy burden that the police must overcome to

---

[13] In Bero, the Second Department wrote:

Although burglary involving a dwelling is classified as a violent felony offense (Penal Law § 70.02[1][b]), the police had no reason to believe the suspects were armed.  Consequently, a delay in arresting the suspects while a warrant was being obtained would not pose a greater danger to the arresting officers or the community.  Furthermore, the items stolen from the premises were not readily capable of disposal, as in a situation involving drugs.  Although it can be inferred that the stolen property was readily removable from the fact the suspects were observed carrying the stolen items in plastic shopping bags, it is unlikely that an attempt to remove the merchandise would have escaped the attention of a surveillance.  The evidence in the record does not adequately explain why, upon securing the necessary information to prepare and secure a warrant, no attempt to obtain a warrant was made and no consideration was given to placing the apartments of Bero and Cruz under surveillance while an attempt to secure a warrant was being made.  Nor does this case involve a true "hot pursuit", where a suspect attempts to defeat a proper arrest which has been set in motion in a public place by the expedient of escaping to a private place. Prior to knocking on the door of Bero's apartment, the officers did not possess a reasonable belief that Bero would escape if not swiftly apprehended or that evidence would be destroyed or removed.  While officers have a right to pursue their investigation by seeking voluntary cooperation from a suspect, the exigency which ensued from knocking on the door was foreseeable.  Under the circumstances of this case, the creation by the police of a foreseeable emergency does not exempt them from the warrant requirement. Consequently, the forcible entry into Bero's apartment was violative of his rights against an unreasonable search and seizure.

526 N.Y.S.2d at 983.

justify a warrantless entry into a home, the Court concludes that a reasonable fact finder could find that exigent circumstances did not exist such to excuse the warrant requirement. See Abdella v. O'Toole, 343 F. Supp.2d 129, 139 (D. Conn. 2004). Thus, on this basis, the motion must be denied.

That being the case, however, the Court also finds that Defendants are entitled to qualified immunity on the illegal entry claim. The defense of qualified immunity "serves important interests in our political system," Sound Aircraft Servs., Inc. v. Town of East Hampton, 192 F.3d 329, 334 (2d Cir. 1999), ensuring that damages suits do not "unduly inhibit officials in the discharge of their duties" by burdening individual officers with "personal monetary liability and harassing litigation." Anderson v. Creighton, 483 U.S. 635, 638 (1987); see Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998).

> Qualified immunity "shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Qualified immunity is thus a shield from *suit*, not simply liability. Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

Holeman v. City of New London, — F. 3d —, —, 2005 WL 2403746, at *2 (2d Cir., Sept. 30, 2005)(emphasis in original). For this reason, the Supreme Court has directed that "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 121 S.Ct. 2151, 2155-56 (2001).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action ... assessed in light of the legal rules that were clearly established at the time it was taken."

14

<u>Anderson</u>, 483 U.S. at 639 (internal quotation marks and citation omitted)

> Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act.

<u>Anthony v. City of New York</u>, 339 F.3d 129 (2d Cir. 2003)(internal quotation marks and citations omitted).  "[Q]ualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances," and officers are entitled to the defense unless the officers' judgment was so flawed that no reasonable officer would have made a similar choice. <u>See</u> <u>Lennon v. Miller</u>, 66 F.3d 416, 424-25 (2d Cir. 1995).

While Plaintiff's right to be free from warrantless police intrusions into his residence without exigent circumstances was clearly established on July 12, 2001, and while Plaintiff's facts, assuming they are true, might amount to a violation of this clearly established right, reasonable police officers in New York, being confronted with the facts known to Defendants at the time, could disagree as to the legality of entering the house without a warrant.  There are numerous case in New York and elsewhere in which courts, applying the federal constitutional Fourth Amendment standard, have found exigent circumstances justifying entry into a house when the police have come upon what is believed to be a burglary in progress. <u>See</u> <u>People v. Peterkin</u>, 785 N.Y.S.2d 620, 622 (4th Dept. 2004)("Here, the emergency exception to the warrant requirement applies because the police justifiably believed that they had interrupted a burglary or trespass in progress and that entry into the apartment was necessary to prevent the commission of a crime.")(citing cases); <u>People v. Martinez</u>, 700 N.Y.S.2d 434, 435 (1st Dept. 1999);[14] <u>People v. McKnight</u>, 689 N.Y.S.2d 832, (4th

---

[14] The Court in <u>Martinez</u> wrote:

(continued...)

Dept. 1999)("While investigating a 911 report of a burglar alarm at an apartment building, police officers legally entered defendant's apartment and observed but did not seize two loaded automatic weapons as well as cocaine and scales. * * *  Although a warrantless search and seizure generally is presumed to be unreasonable [], here the officers had reasonable grounds to believe that there was an emergency at the apartment requiring their immediate assistance for the protection of life or property;  thus, the initial entry was not motivated by intent to arrest and seize evidence.");  United States v. Johnson, 9 F. 3d 506, 509-510 (6th Cir. 1993)(citing cases);[15]  see also Estrella., *Belief*

---

[14](...continued)

The court properly denied suppression of the physical evidence recovered from defendant's apartment, since the record supports an emergency basis for entry of that dwelling that led to the plain view discovery of evidence whose incriminating nature was readily apparent.  The police responded to a report of a burglary and saw that the apartment door had been pried upon and left ajar.  Accordingly, the police properly entered to look for possible perpetrators or victims.

700 N.Y.S.2d  at 435.

[15]  In Johnson, the police received a call from a neighbor that a burglary was in progress and, upon investigating, found a broken window. The people inside the house did not respond to the officers' knocking and had to be ordered to approach the window. When they did, they could not produce identification or a key to open the door, and they lied about the presence of other people in the residence.  The Sixth Circuit affirmed the district court's decision to deny suppression of evidence discovered after the police entered the residence, holding that:

The circumstances confronting the officers justified their warrantless entry into the residence because "[i]t would defy reason to suppose that [the officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested.  It is only 'unreasonable' searches and seizures that the fourth amendment forbids." [United States v. Singer, 687 F.2d 1135, 1144 (8th Cir. 1982), adopted in relevant part, 710 F.2d 431 (8th Cir.1983) (en banc) ].

F. 3d at 510. In reaching this decision, the Sixth Circuit noted:

The Supreme Court has recognized only a few emergency circumstances excusing the need for a warrant, namely, hot pursuit of a fleeing felon, destruction of evidence, and fire on the premises. [].  Several of our sister circuits, however, have upheld warrantless searches conducted during burglary investigations under the rubric of exigent circumstances.  For example, in United States v. Valles-Valencia, 811 F.2d 1232 (9th Cir.), amended on other grounds, 823 F.2d 381 (9th Cir. 1987), the police responded to a report that strangers were parked in front of a nearby house, the owners of which were on vacation.  The strangers could not adequately explain their presence and a front window showed signs of being pried open.  The police also smelled marijuana.  Suspecting that a burglary was in progress, the police entered the house and discovered a variety of controlled substances.  The Ninth Circuit upheld the search after finding that exigent circumstances justified the

(continued...)

*That Burglary Is in Progress or Has Recently Been Committed as Exigent Circumstance Justifying*

*Warrantless Search of Premises*, 64 ALR 5th 637 , §§ 3[a], [b], 4[a] (1998)(citing cases); Bilida v.

McCleod, 211 F.3d 166 (1st Cir. 2000) (police officer who responded to silent alarm at residence

was justified in making warrantless entry into backyard of residence to check for signs of burglary).

Given the uncontroverted facts on this motion, reasonable officers could disagree whether,

coming upon what appeared to be a burglary in progress, they had sufficient exigent circumstances

to enter an unoccupied building[16] in order to stop the crime. See Loria, 306 F.3d  at 1287

("[Defendant police officer] is entitled to qualified immunity, however, if reasonable officers could

disagree as to whether exigent circumstances were present."); Koch v. Town of Brattleboro, 287

F.3d 162, 169 (2d Cir. 2002) (holding that a grant of summary judgment based on qualified

_____

[15](...continued)

initial warrantless entry into the house. [] Id. at 1236 [].  See also Reardon v. Wroan, 811 F.2d 1025, 1030 (7th Cir. 1987) (case involving police officers' entry and search of a fraternity house in which court found that "[d]efendants were faced with a call reporting a burglary in progress during a time of year when [ ] students were on break and burglaries were known to occur more frequently.   And when they arrived they found a single car in the driveway and the door to the residence unlocked. Therefore, ... we conclude based on these facts that the exigency requirement was satisfied as a matter of law."); United States v. Singer, 687 F.2d 1135, 1144 (8th Cir. 1982), adopted in relevant part, 710 F.2d 431 (8th Cir.1983) (en banc) (upholding warrantless entry of residence where circumstances indicated burglary in progress);  United States v. Estese, 479 F.2d 1273, 1274 (6th Cir.1973) (upholding warrantless search where police observed signs that apartment door had been pried open).

Id. at 509.

[16] It is also significant that Defendants believed, based upon an identified citizen's complaint, that the building in which the burglary was occurring was "unoccupied."  This distinguishes this case from those unlawful entry cases where the police have cornered a suspect in his home and the decision facing the police was whether to (a) enter the home, or, (b)  surround it and seek a warrant. Inasmuch a reasonable police officer would not believe that a burglar had a Fourth Amendment right to the sanctity of an unoccupied house, it would not have been clear to a reasonable officer that his conduct of entering the house to stop the crime was unlawful in the situation confronted. See Ortega v. O'Connor, 146 F.3d 1149, 1157-58 (9th Cir.1998) (considering "[f]irst" whether the § 1983 plaintiffs' "reasonable expectation of privacy in their private offices, desks, and file cabinets" was clearly established before proceeding to the second question of whether it was clearly established that the search was unreasonable); People v. McGaha,  533 N.Y.S.2d 931, 932 (2nd Dept. 1988) (Burglary suspect, who occasionally spent night at wife's apartment and who on day of burglary had permission to be in apartment to care for child, was merely transient with no reasonable expectation of privacy in any room of apartment, and lacked standing to challenge search of apartment).

immunity "was appropriate because the officers reasonably believed that exigent circumstances justified their entry"). Therefore, the Court finds both Defendants are entitled to qualified immunity on that much of Plaintiff's action asserting an illegal entry into his house.

**B.  Unlawful Arrest**

The Court turns next to Plaintiff's claim of an unlawful arrest.  There can be no serious dispute that, on the instant record, Plaintiff has presented a material issue of fact as to whether he was arrested within the meaning of the Fourth Amendment when Defendants ousted him out of bed with their guns drawn, accompanied him downstairs while holding his arm tightly, required him to produce identification, ordered him outside, brought him to a neighbor's house, and required him to wait in his car while they checked his vehicle information. See County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998)(A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied.")(interior quotation marks and citation omitted); Tennessee v. Garner, 471 U.S. 1 (1985)("Whenever an officer restrains the freedom of a person to walk away, he has seized the person."); Terry v. Ohio, 392 U.S. 1 (1968)(Whenever an individual is physically or constructively detained by a police officer in such a manner that a reasonable person would not feel he is free to leave, that individual has been "seized" or "arrested" within the meaning of the Fourth Amendment.).

The more pertinent question, however, is whether Defendants had probable cause for their actions. This is because the existence of probable cause to make an arrest negates an essential element of a false arrest claim. Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003); see Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999)("It is well established that appellant's Section 1983 claims against appellees for false arrest and false imprisonment must fail if the appellee-officers had

probable cause to arrest him."); <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)(probable cause is a complete defense to both federal and state law claims for false arrest and false imprisonment).

Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." <u>Posr v. Court Officer Shield No. 207</u>, 180 F.3d 409, 414 (2d Cir. 1999). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." <u>Devenpeck</u>, 125 S.Ct. at 593; <u>see</u> <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997)(In evaluating the probable cause determination, the Court "consider[s] the facts available to the officer at the time of the arrest.")(citing <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 569 (2d Cir. 1996)). The inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. <u>Devenpeck</u>, 125 S. Ct. at 593-94; <u>Martinez v. Simonetti</u>, 202 F.3d 625, 633 (2d Cir. 2000).

"A probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." <u>Hahn v. County of Otsego</u>, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), <u>aff'd</u>, 52 F.3d 310 (2d Cir. 1995).  "If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable ... merely because it later turns out that the complaint was unfounded." <u>Lee v. Sandberg</u>, 136 F.3d 94, 103 (2d Cir. 1997)(quotation marks and citation omitted)). "In fact, the eventual disposition of the criminal charges is irrelevant to the probable cause determination." <u>Hahn</u>, 820 F. Supp. at 55 (citing <u>Pierson v. Ray</u>, 386 U.S. 547, 555 (1967)).

Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the court as a matter of law. <u>Weyant</u>, 101 F.3d at 852. Even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events is sufficient to establish probable cause to arrest. <u>Mistretta v. Prokesch</u>, 5 F. Supp.2d 128, 133 (E.D.N.Y. 1998). However, where there are "genuine issues" as to any material facts surrounding the issue of probable cause such that it can be said that the question of probable cause is "predominately factual in nature," the determination should be made by a jury. <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1115 (1998).

In the instant case, the uncontroverted facts provided Defendants with sufficient probable cause to detain Plaintiff while they investigated the burglary allegation. As indicated, the facts were such that Defendants received a report from an identified citizen that a male had been seen climbing into the window of an unoccupied house.  Upon arriving, they found a truck in the driveway, a light on inside the house, and an open window. Upon entering, they repeatedly announced their presence but received no response.  These circumstances were indicative of a burglary in progress with the burglar attempting to evade captured.

The fact that Plaintiff was found sleeping in bed did not negate the possibility that he was a burglar who was attempting to evade imminent arrest by feigning lawful presence in the house. <u>See</u> <u>Mason</u>, 248 A.D.2d at 751-752.[17]  Defendants' suspicions were also justifiably heightened by the

---

[17] In <u>Mason</u>, the police were also confronted by a suspect who feigned sleep to avoid an arrest. In that case, following a police chase of defendant's automobile, an accident, and the fleeing of the defendant, the police followed the defendants' footprints in the snow to a nearby house.

[An officer] testified that, due to the signs of forced entry, he was concerned about a possible burglary and for the safety of anyone inside the dwelling.  The Deputies entered, announced their presence and, hearing nothing, began to search.

(continued...)

20

fact that Plaintiff did not know where the light switch was, and did not know the telephone number of his landlord. Under the circumstances, Defendants were justified in detaining Plaintiff while they investigated the situation. Given the existence of probable cause, the false arrest claim must be dismissed.

Further, assuming *arguendo* that actual probable cause did not exist, arguable probable cause existed to detain Plaintiff while Defendants investigated. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Escalera v. Lunn, 361 F. 3d 737, 743 (2d Cir. 2004)((quoting Golino v. City of New Haven, 950 F. 2d 864, 870 (2d Cir. 1991)).  Given the facts and circumstances presented to Defendants, officers of reasonable competence could certainly disagree on whether the probable cause test was met to detain Plaintiff while they investigated the complaint.  Therefore, the Defendants are entitled to qualified immunity on the false arrest claim.

### C.  Excessive Force

Next, the Court turns to Plaintiff's claim of an unconstitutional use of force during his arrest. It is well settled that not every push or shove occurring during an arrest constitutes excessive force within the meaning of the Fourth Amendment. See Graham v. O'Connor, 490 U.S. 386, 396 (1989).

---

[17](...continued)

> They followed a trail of water leading to a back bedroom where they found defendant lying face down on a bed. His pants and socks were wet as were his boots.  Defendant stated that he had been lying in bed for approximately six hours.  The Deputies observed that defendant had watery eyes, slurred speech, a strong smell of alcohol and was belligerent.

248 A.D.2d at 751-752. As it turns out, the house belonged to the woman who was found slumped over in the front seat of the car the police were chasing.  See id.  Plaintiff was arrested, and convicted, for, *inter alia*, felony driving while intoxicated.

Rather, the Supreme Court held in <u>Graham</u> that in determining whether the force used to effect a particular seizure is "reasonable' under the Fourth Amendment requires a careful balancing of numerous factors including the severity of the crime at issue, whether the person is attempting to flee or resist arrest, and whether the suspect possess a threat to the safety of the officers or others. <u>Graham</u>, 490 U.S. at 396.  As the Supreme Court has stated:

> Because "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation," the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.

<u>Saucier</u>, 121 S. Ct. at 2158 (quoting and citing <u>Graham</u>, 490 U.S. at 396).

The Supreme Court has cautioned that the objective reasonableness standard cannot be viewed with the "20/20 vision of hindsight" in the calm of a judge's chambers.  Instead, the fact-finder must accord deference to the judgment of a reasonable officer on the scene.  <u>Graham</u>, 490 U.S. at 393, 396.  The <u>Graham</u> standard holds that if an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. <u>Saucier</u>, 121 S.Ct. at 2158. The reasonableness inquiry must be undertaken without regard to the underlying motives or intent of the police officers. <u>Graham</u>, 490 U.S. at 397;  <u>Calamia v. City of New York</u>, 879 F.2d 1025, 1034-35 (2d Cir. 1989).  "If a plaintiff sustains an injury during an arrest, this is a relevant factor for the court in considering whether the force used was reasonable. However, reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury." <u>Gonzalez v. City of New York</u>, 2000 WL 516682, at * 4 (S.D.N.Y. March 7, 2000)(citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)).

There is no evidence that Defendant Fuenfstuek did anything to cause Plaintiff any injury,

or, at any time, inflict any force on Plaintiff. Further, there is no evidence upon which a reasonable jury could conclude that Defendant Fuenfstuek was aware of any constitutionally offensive force being inflicted upon Plaintiff by Defendant Tatro such to require Defendant Fuenfstuek to intervene. See Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001)(an officer has a duty to intervene to prevent the unconstitutional acts of another officer occurring in his presence.).  Indeed, the only evidence of any force applied by either Defendants was by Defendant Tatro in holding Plaintiff tightly by his arm while escorting him down the stairs. Plaintiff concedes that while this was occurring, Defendant Fuenfstuek was looking though the rooms and closets upstairs to see if any persons or weapons were present.  Plaintiff asserted a few days after the incident that he "did not recall feeling any pain" on the night in question, so he necessarily did not yell out in pain or give any other indication that he was in pain by Tatro's grip such to put Fuenfstuek on notice that Plaintiff was being injured by Tatro. Accordingly, the excessive force claim against Defendant Fuenfstuek is dismissed.

Turning to the claim against Defendant Tatro, the only injury attributable, in any manner, to Tatro's conduct are the two small bruises Plaintiff discovered on his upper arm.  Assuming on this motion that these bruises were caused by Tatro's "very tight" grip, it is questionable whether the amount of forced used by Tatro in causing this injury was constitutionally offensive.  As indicated, there is no evidence that Plaintiff was caused any pain by the grip, and he stated at the end of the evening that Defendant Tatro's conduct "wasn't too bad."  Plaintiff's later assertion that the bruises were caused by Tarto's grip are, as he concedes, based upon nothing more than pure speculation.

Further, assuming that Tatro caused the bruising on Plaintiff's arm by holding Plaintiff, no reasonable fact finder could conclude that this use of force, under the circumstances, was

23

unreasonable. At the time Plaintiff was being held by Tatro, Tatro had reasonable cause to believe that Plaintiff was a burglar caught in the act, and, thus, reasonable cause to believe that Plaintiff might flee.  Still further, the uncontroverted evidence indicates that Tatro's grip was not so tight that Plaintiff could not get free as demonstrated by the fact that Plaintiff broke free from Tatro's grip when Plaintiff stumbled on the first step of the stairs. As indicated, Plaintiff has no memory of feeling any pain that evening, and he even told Tatro that his conduct was not too bad.

Finally, assuming *arguendo* that (1) Tatro caused the bruises on Plaintiff's arm, and, (2) the use of such force was constitutionally offensive under the circumstances, Tatro is entitled to qualified immunity for his conduct. See Cowen v. Breen, 352 F.3d 756, 761 (2d Cir. 2003)(explaining the application of qualified immunity on excessive force claims). Under the circumstances confronting Defendant Tarto on July 12, 2001, it would not have been clear to a reasonable officer that his conduct of "very tightly" holding a burglary suspect's arm while escorting him through the house to find identification was unlawful in the situation confronted. Id.

## V.  CONCLUSION

Based upon the reasons set forth above, Defendants' motion for summary judgment is **GRANTED** and the action is **DISMISSED**.

**IT IS SO ORDERED**

DATED:October 7,2005

Thomas J. McAvoy
Senior, U.S. District Judge

24